UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOHN DEATON and MARIA F. DEATON,

                              Plaintiffs,                      **MEMORANDUM AND ORDER**

-against-                                                      17-CV-4592 (RRM) (GRB)

PAUL NAPOLI and MARIE NAPOLI,

                              Defendants.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

        Plaintiffs John Deaton and Maria F. Deaton ("the Deatons"), proceeding *pro se*, bring this action pursuant to the Court's diversity jurisdiction, alleging defamation and tortious interference with business relations by defendants Paul Napoli and Marie Napoli ("the Napolis"). Presently before the Court is the Napolis' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted and the amended complaint is dismissed.

## BACKGROUND[1]

        The Deatons are attorneys in Rhode Island who were previously married. (Am. Compl. (Doc. No. 28) at ¶ 11.) The Deatons filed for divorce on June 5, 2007, and a formal divorce hearing was held on December 18, 2007. (*Id*. at ¶ 31.) John Deaton is the owner of the Deaton Law Firm, LLC, which is headquartered in Rhode Island and almost exclusively practices asbestos litigation. (*Id*. at ¶ 12.) The Napolis are attorneys who reside in New York. (*Id*. at ¶¶

---

[1] The following facts are drawn from the amended complaint and its attachments, and are assumed true for the purpose of this Order. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The facts of this case are also set forth in the January 10, 2019, Order of the Honorable Joseph F. Bianco, to whom this case was originally assigned. *See Deaton v. Napoli*, No. 17-CV-04592 (JFB) (GRB), 2019 WL 156930 (E.D.N.Y. Jan. 10, 2019) (finding New York law applies to this case).

4, 5, 12.)  The Deaton Law Firm is a competitor of Paul Napoli's former firm, Napoli Bern Ripka Shkolnik LLP ("Napoli Bern").  (*Id*. at ¶ 12.)

In November 2007, John Deaton employed a woman named Vanessa Dennis.  (*Id*. at ¶ 14.)  Dennis worked as an associate or paralegal at the Deaton Law Firm for several years before giving her notice in December 2010.  (*Id*. at ¶¶ 14–15.)  Shortly thereafter, she began working at Napoli Bern, where it is alleged that she had a relationship with Paul Napoli.  (*Id*. at ¶¶ 15–16.)  As the amended complaint further alleges, the relationship was discovered by Marie Napoli, and Dennis was fired from Napoli Bern.  (*Id*. at ¶ 16.)  Several lawsuits have been filed related to these circumstances.  (*Id*. at ¶ 17.)

On May 21, 2013, Marie Napoli sent a Facebook message to the Deatons, asking whether John had a relationship with Dennis, and whether that had caused their divorce.  (*Id*. at ¶ 19.)  John denied the relationship and claimed that the divorce was not due to infidelity.  (*Id.*)  He told Marie that his divorce was underway before he ever met and hired Dennis, and he asked Marie not to contact him or his family again.  (*Id*.)  She replied, "I want to know so I can warn any future employer's wives of this if it [is] a recurring problem."  (*Id*.)

The Deatons allege that despite John Deaton's denial, Marie Napoli proceeded to make knowingly false statements about a relationship between John Deaton and Vanessa Dennis in letters, emails, texts, and social media messages.  (*Id*. at ¶ 18.)  First, on August 27, 2013, Marie Napoli posted on Dennis' Facebook page:  "[Dennis] has lost her last two jobs for sexually perusing [sic] her last two bosses who were both married at the time.  It ended badly."  (*Id*. at ¶ 20; 8/27/2013 Facebook Post, Pls.' Ex. A to Am. Compl.)  A few months later, around November 2013, Marie Napoli wrote letters to two wives of Dennis' "current employers," who reside in Houston, Texas, and who are referred to as Mrs. Shroder and Mrs. Stomel in the

2

amended complaint. (Am. Compl. at ¶ 21.) The amended complaint's reference to "current employers" appears to refer to Shrader & Associates LLP., a Texas-based law firm focusing on asbestos litigation, where Dennis began working after she was fired from Napoli Bern. (*Id*. at ¶ 18 & n.1.) The letters intended to warn the women about Dennis' history with her former bosses, stating that Dennis "assisted her previous boss in his divorce" and that he "bought her a Mercedes and expensive gifts." (*Id*. at ¶ 21; Letters from Marie Napoli, Pls.' Ex. B and Ex. F to Am. Compl.) The letters stated that Dennis had received harassing emails from John Deaton, that she was "petrified to see him," and that after Marie Napoli contacted Maria Deaton, Maria would not allow John Deaton to see his children. (Am. Compl. at ¶ 21.) [2]

Shrader & Associates previously had a business relationship with John Deaton and the Deaton Law Firm. (*Id*. at ¶ 38.) However, the Deatons allege that after "Partners" at Shrader & Associates received Marie Napoli's letters, "claiming John Deaton not only had an affair with Ms. Dennis resulting in his ex-wife preventing him from seeing his children, but most significantly, was harassing Ms. Dennis at her new employment, Shrader and Associates decided to no longer continue their business relationship" with the Deaton Law Firm. (*Id*.)[3]

Marie Napoli also sent LinkedIn e-mails to "individuals associated with Ms. Dennis's current employer in Texas" in May 2014, stating, *inter alia*, "[Dennis] caused her boss from RI's

---

[2] Although not entirely clear, the amended complaint appears to allege that the Deatons did not learn of these letters until February 2017. (Am. Compl. at ¶ 29.)

[3] The Court notes that in sections of the amended complaint, the Deatons refer to "letters" sent by the Napolis to John Deatons' colleagues, without naming the recipients or clarifying whether or not these are the same letters referenced *supra*, sent to Mrs. Shroder and Mrs. Stomel. *See* Am. Compl. at ¶ 29 (alleging that the Napolis wrote "several letters to colleagues and fellow plaintiff attorneys of Plaintiff John Deaton and their wives, Mrs. Shroder and Mrs. Stomel"); *see also id*. at ¶ 46 (alleging that statements were made to "Plaintiff's small asbestos legal community"). Regardless, as explained *infra*, both defamation and tortious interference claims require plaintiffs to identify specific third-parties, and thus, vague allegations regarding statements to the "legal community" or unnamed "colleagues" are not actionable.

3

divorce. She had to relocate and move to NY." (*Id*. at ¶ 22; 5/15/2014 LinkedIn E-mails, Pls.' Ex. C to Am. Compl.)

Marie then sent a message to Dennis' husband in June 2014, containing "other" knowingly false statements about an affair between Dennis and John Deaton. (Am. Compl. at ¶ 24.) She also sent messages to Dennis' Facebook friends in June and July 2014, stating that Dennis was forced to leave her job in Rhode Island due to an affair with her boss. (*Id*. at ¶ 23.)

In November 2014, Paul Napoli spoke to the *New York Post*. (*Id*. at ¶ 26; Nov. 2014 News Article, Pls.' Ex. D to Am. Compl.) He allegedly stated, "[e]verything my wife said in any email whether it sounds terrible or not was all true and was all factually correct." (Am. Compl. at ¶ 26.)

Additionally, the Napolis allegedly made false statements about the Deatons in the course of various lawsuits. The Deatons first discovered this in February 2017 through civil defense attorneys, their colleagues in the asbestos litigation community, who told them that their divorce and children had been discussed in court filings. (*Id*. at ¶ 28.)

Marie Napoli filed at least three lawsuits relevant to the Deatons' claims. First, on June 15, 2015, Marie filed a complaint against Dennis in Cook County, Illinois. (*Id*. at ¶ 27.) The Deatons allege that she made false statements in connection with that case, including, *inter alia*, that Dennis' "previous boss had bought her expensive gifts . . . and was harassing her via texts and emails after his divorce," and that Dennis was "the cause" his divorce. (*Id*.)

On December 9, 2016, Marie Napoli commenced an action, *Napoli v. Ratner*, which was removed to the United States District Court for the Eastern District of New York. *See* 16-CV-6483 (JMA) (AKT) (E.D.N.Y.). (*Id*. at ¶ 28.) The Deatons attach an excerpt of the complaint in *Ratner* to the pleading, and allege that it contained several false statements, including that Dennis

4

"had a sexual relationship with her previous employer from Rhode Island," that "Deaton was harassing" Dennis, that he was "threatening" to "tell her husband everything," and that he was unable to see his children after his wife discovered the affair. (*Ratner* Compl., Pls.' Ex. E to Am. Compl. at ¶¶ 27, 28, 30.) The *Ratner* complaint also alleged that Dennis "specifically targets her bosses and uses sex to advance her career," and that "[s]he has done this with her previous boss from Rhode Island, with [Marie Napoli's] husband, and appears to be doing it now with her current boss." (*Id*. at ¶ 55.)

Finally, on April 28, 2017, Marie Napoli filed claims against Dennis and other third parties in the Eastern District of New York in the case of *Napoli v. Kern, et al.*, 17-CV-2563 (ADS) (AKT) (E.D.N.Y.). (Am. Compl. at ¶¶ 32, 33.) A portion of the relevant complaint in *Kern* is attached to the amended complaint. (*See Kern* Compl., Ex. H to Am. Compl.) The *Kern* complaint restates the aforementioned allegations, including that Dennis claimed John Deaton harassed and threatened her. (*See* Am. Compl. at ¶ 32; *Kern* Compl. at ¶¶ 63–66.)

On March 28, 2017, the Deatons commenced this action against the Napolis for defamation and tortious interference. The action was initially filed in the Superior Court of Rhode Island, (Doc. No. 2), but the case was removed to the United States District Court for the District of Rhode Island on the grounds of diversity jurisdiction. (Notice of Removal (Doc. No. 1).) Upon the Napolis' motion to dismiss for lack of personal jurisdiction and improper venue, in which they moved in the alternative to transfer venue, (Doc. No. 8), the case was transferred to the Eastern District of New York. (Doc. No. 15).[4]

In the amended complaint, the Deatons bring claims for (1) defamation, specifically libel *per se*, libel, and slander, and (2) tortious interference with business relations. They allege that

---

[4] On May 21, 2019, the case was reassigned to this Court from the Honorable Joseph F. Bianco upon Judge Bianco's elevation to the Second Circuit Court of Appeals.

the Napolis made defamatory statements with malicious and intentional disregard for the truth, and that the statements "originated" with Paul Napoli and were repeated by Marie. (Am. Compl. at ¶¶ 35–36.) They assert that the Napolis (1) "knew their statements were false" because John Deaton told Marie Napoli as much in 2013; (2) had "no reliable basis" for their claims; and (3) "fabricated" details. (*Id*. at ¶ 36.) The Deatons emphasize that the Napolis are sophisticated attorneys who ignored readily available legal documents which would have confirmed that their divorce was filed five months before John Deaton ever met Dennis, and that the alleged affair "clearly could not have been a cause" of the Deatons' divorce. (*Id*. at ¶ 31.)

The Deatons assert that the alleged defamation implicated their entire family in a "malicious tale," and also "intentionally interfere[d] with business relationships between" the Deatons, "fellow attorneys, and clients." (*Id*. at ¶ 1.) They believe that the Napolis spread lies "in an effort to intentionally harm" the reputations of John Deaton and the Deaton Law Firm, a "direct competitor[]" to Napoli Bern. (*Id*. at ¶ 37.) . (*Id*. at ¶ 36.) They believe that Shrader & Associates' decision to end its business relationship with the Deaton Law Firm was driven by Marie Napoli's accusation that John Deaton harassed Dennis, a then-new Shrader & Associates employee. (*Id.* at ¶ 38.) The Deatons allege that the loss of that relationship cost the Deaton Law Firm hundreds of thousands of dollars in attorney fees, and the "continued loss will ultimately result in a loss of millions of dollars." (*Id*.) They claim that by "making and widely disseminating" defamatory statements, the Napolis have "directly caused" them to "suffer reduced referrals of clients and income." (*Id*. at ¶ 40.) The Deatons also contend that Dennis, at Paul Napoli's "direction, attempted to use employees at the Deaton Law Firm to secretly file asbestos cases" in Rhode Island for Napoli Bern. (*Id*. at ¶ 36.)

The Deatons seek declaratory and injunctive relief, as well as damages. They ask the Court to declare that the defamatory statements are false, and they seek an order requiring the Napolis to retract any false statements and permanently enjoining them from making defamatory statements. (Am. Compl. at 10–11.) The Deatons seek special damages of $3,000,000 for tortious interference with business relations, and $10,000,000 in compensatory damages for the "emotional distress and loss of reputation" resulting from the alleged libel *per se*, libel, and slander. (*Id*. at 11–12.)

In their motion to dismiss, the Napolis argue that (1) the majority of statements at issue are barred by the statute of limitations; (2) the remaining statements are privileged because they were made in the course of litigation; (3) the amended complaint fails to allege that Paul Napoli made any defamatory statements; and (4) to the extent the Deatons base their claim on Paul's statements to Marie Napoli, those communications are subject to spousal privilege. (Defs.' Mem. (Doc. No. 39).)

The Deatons insist that their claims are timely, as the Napolis' republished statements fall within the statute of limitations. (Pls.' Opp'n (Doc. No. 41) at 3–4.) Further, they assert that the statements are not subject to the litigation privilege because they were not only immaterial to the proceedings at issue, but were motivated solely by malice. (*Id.* at 5.) The Deatons allege that they should be afforded the opportunity to prove malice through discovery. (*Id*. at 5–6.)

**STANDARD OF REVIEW**

While the Deatons proceed *pro se*, they are experienced attorneys. Accordingly, their pleading is "not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs." *Bliven v. Hunt*, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) (citations omitted). Still, the Court construes the complaint liberally, accepting all factual allegations in it as true and "drawing all

reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (internal quotation marks omitted) (citation omitted).

Although the Napolis frame the instant motion as one for judgment on the pleadings under Rule 12(c), the Court will treat it as a motion for failure to state a claim under Rule 12(b)(6), as no answer has been filed to the amended complaint. *See* FED. R. CIV. P. 12(c) ("After the pleadings are closed . . . a party may move for judgment on the pleadings." (emphasis added)); *see also S&L Vitamins, Inc. v. Australian Gold, Inc.*, No. 05-CV-1217 (JS) (MLO), 2006 WL 8423836, at *4 (E.D.N.Y. Mar. 30, 2006) (construing a Rule 12(c) motion as a 12(b)(6) motion because no answer had been filed to amended counterclaims). In any event, courts apply the same standard in deciding motions under Rules 12(b)(6) and 12(c). *See Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Detailed facts are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The determination of whether "a complaint states a plausible claim for relief" is

"a context-specific task" requiring the court to "draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

On a Rule 12(b)(6) motion to dismiss, a court may consider facts alleged in the complaint, exhibits attached to it, and documents incorporated therein by reference. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Additionally, Rule 201(b) of the Federal Rules of Evidence permits courts to take judicial notice of certain documents. A judicially noticed fact must be one "that is not subject to reasonable dispute," in that it is either (1) "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions." *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (internal quotation marks omitted) (citation omitted). However, judicial notice of court filings is taken for the limited purpose of establishing "the fact of such litigation and related filings," not for "the truths of the matters asserted . . . ." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citation omitted); *see also Glob. Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## DISCUSSION

### I. Defamation

Defamation, "consisting of the twin torts of libel and slander," is "the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). Written defamatory words are classified as libel, while spoken defamatory words are slander. *See Greene v. Paramount Pictures Corp.*, 340 F. Supp. 3d 161, 168 (E.D.N.Y. 2018). Defamatory statements "tend[] to expose a person to hatred, contempt or

aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 629 (E.D.N.Y. 2018) (internal quotation marks omitted) (citation omitted).

To state a claim for defamation under New York law, the complaint must allege (1) a false statement, (2) published to a third party, (3) without authorization or privilege, (4) through fault amounting to at least negligence, which (5) either constitutes defamation *per se* or caused "special damages." *See Greene*, 340 F. Supp. at 168; *see also Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Albert*, 239 F.3d at 266–67. A statement is defamatory *per se* if it "tends to injure [the plaintiff] in her trade, business, or profession . . . or if the statement is so severe that serious injury to the plaintiff's reputation may be presumed." *Baez v. JetBlue Airways*, No. 09-CV-0596 (ENV) (RML), 2014 WL 11462719, at *8 (E.D.N.Y. July 7, 2014) (internal quotation marks omitted) (citation omitted); *see also Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000); *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, No. 18-CV-1736 (ER), 2019 WL 1259102, at *8 (S.D.N.Y. Mar. 19, 2019).

However, the Court need not address whether the amended complaint makes out a claim for defamation. For the reasons explained below, the Deatons' claim is not actionable because the statements upon which the claim is based are either untimely or privileged.

### A. Statute of Limitations

New York law sets a one-year statute of limitations for defamation claims. *See* N.Y. C.P.L.R. § 215(3); *see also Solomon v. Amazon.com, Inc.*, No. 18-CV-5528 (ERK) (PK), 2019 WL 2601794, at *2 (E.D.N.Y. June 24, 2019). Under New York's "single publication rule," the statute of limitations "ordinarily begins to run at the time of the 'first publication' . . . ." *Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) (citing *Van*

*Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003)); *see also Thomas v. City of New York*, No. 17-CV-06079 (ARR) (JO), 2018 WL 5791965, at *6 (E.D.N.Y. Nov. 5, 2018). An exception exists where a statement is republished in a new format, in which case the time "begins to run anew from the date of republication." *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (citing *Firth v. State*, 98 N.Y.2d 365, 371 (N.Y. 2002)). However, republication only occurs "upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition" and is intended to reach a "new audience." *Firth*, 98 N.Y.2d at 371 (internal quotation marks omitted) (citations omitted). Moreover, a "later discovery of defamatory material does not toll the one-year statute of limitations." *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 571 (S.D.N.Y. 2016) (citations omitted), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016).

Here, the one-year statute of limitations mandates that the statements must have been published no earlier than March 28, 2016, as the Deatons filed the original complaint on March 28, 2017. There are only two sets of statements that are not time-barred: (1) allegations made in December 2016, in the complaint filed in *Napoli v. Ratner, et al.*, 16-CV-6483 (JMA) (AKT) (E.D.N.Y.), and (2) allegations made in April 2017, in the complaint filed in *Napoli v. Kern, et al.*, 17-CV-2563 (ADS) (AKT) (E.D.N.Y.). Most of the statements at issue – the Facebook messages, letters, emails, Paul Napoli's statement to the media, and Marie Napoli's statements in relation to her Illinois lawsuit – were made prior to 2016, well outside the one-year limitations period. Thus, the majority of statements are time-barred.

To the extent the Deatons attempt to circumvent the limitations period by broadly asserting that the Napolis republished statements "to as many new audiences as they possibly

could," this portrayal of continuous republication, without more, does not suffice. (Pls.' Opp'n at 4.) In order to survive a motion to dismiss, the Deatons must point to a concrete statement made to an identifiable third party. *See Kamdem-Ouaffo*, 160 F. Supp. 3d at 572 & n.24 (finding plaintiff could not "seek to evade the statute of limitations" by alleging that "[u]p to this date," defendants "continued to defame" her, without identifying a particular statement made within the limitations period); *see also Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 537 (S.D.N.Y. 2015) (finding that a "complaint must at least identify" the statements, the publisher, the time the statements were made, and the third parties to whom they were made). Moreover, "a cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception." *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998).

Accordingly, the Court is compelled to dismiss as untimely any defamation claim predicated on statements published prior to March 28, 2016.

### B. Litigation Privilege

With respect to the remaining statements made in connection with the civil complaints related to this action, although they are not time-barred, they are privileged and thus not actionable.

One of the requisite elements of a defamation claim is the publication of a false statement made without privilege or authorization. New York law "accord[s] an absolute privilege" to statements made "in the course of judicial proceedings and which relate to the litigation." *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012). A statement made in the course of a judicial proceeding is absolutely privileged, "so long as it is considered material and pertinent to the litigation." *Id.* (citations omitted); *see also Weinstock v. Sanders*, 42 N.Y.S.3d

205, 207–08 (2d Dep't 2016) (noting that the privilege applies "at all stages" of litigation). "The test of pertinency . . . is extremely liberal, so as to embrace anything that may possibly or plausibly be relevant or pertinent." *Weinstock*, 42 N.Y.S.3d at 208 (citing cases). While the Second Circuit recently emphasized that pertinence is "an important (if rarely implemented) limitation on [the] scope" of the litigation privilege, *Brown v. Maxwell*, 929 F.3d 41, 53 n.47 (2d Cir. 2019), it is generally considered "the broadest possible of privileges," covering "any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent." *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) (per curiam) (internal quotation marks omitted) (citations omitted).

Courts routinely find that statements in pleadings are shielded by absolute privilege. *See Lader v. Delgado*, 941 F. Supp. 2d 267, 273 (E.D.N.Y. 2013) (finding statements "made in pleadings that relate to the subject matter" of the action were "absolutely privileged" (citation omitted)); *see also D'Annunzio*, 876 F. Supp. 2d at 217. Further, these statements are protected "irrespective of the motive" of the publisher. *Kelly*, 485 F.3d at 666. If the litigation privilege applies, then the protection is absolute, and it is "not lost even in the presence of malice." *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 48 (S.D.N.Y. 2016) (citation omitted), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015).

Here, the only statements published within the one-year statute of limitations were all made in the context of civil lawsuits brought by Marie Napoli. The Deatons argue that the statements are nevertheless not privileged because they "did not address 'the core of the underlying proceeding,'" (Pls.' Opp'n at 5 (citation omitted)), "had no legal justification, and provided no value to any legitimate legal claims made by the Defendants." (Am. Compl. at ¶ 36.) While the Court must accept the factual allegations in the amended complaint as true, it will

not accept the Deatons' legal conclusion that the statements were not valuable to the judicial proceedings.

In both cases at issue, the defamatory statements were made by Marie Napoli in the pleadings. In *Napoli v. Ratner*, Marie asserted claims for abuse of process, infliction of emotional distress, and prima facie tort against Dennis' lawyers, who had filed a lawsuit against her.[5] She alleged injuries sustained as a result of Dennis' affair with her husband, and the complaint was premised on a theory that Dennis is a sex addict who habitually engages in affairs with her bosses. The complaint focused on how "Dennis specifically targets her bosses," citing John Deaton repeatedly as a prime example. (*Ratner* Compl., Pls.' Ex. E to Am. Compl. at ¶¶ 27–30, 55.) Accordingly, the Court finds that the allegations in the *Ratner* complaint that Dennis had an affair with John Deaton and caused the Deatons' divorce were material and pertinent to Marie Napoli's claims and her ability to prove damages in that case.

In *Napoli v. Kern*, Marie Napoli brought claims against Dennis, Dennis' attorneys, and a New York State Supreme Court Justice pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights under the First Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments. (*See Kern* Compl., Pls.' Ex. H to Am. Compl. at ¶ 2.) Napoli alleged that a gag order imposed on her in a separate lawsuit prevented her from exercising her right to free speech and to warn others about Dennis. As in *Ratner*, the portrayal of Dennis as a "predatory" sex addict who targets married colleagues was central to Napoli's theory of her case. (*Id*. at ¶ 60.) The *Kern* complaint's numerous allegations about Dennis' affair with John Deaton

---

[5] While excerpts of the *Ratner* and *Kern* complaints are attached to the Deatons' amended complaint, the Court takes judicial notice of the complaints in their entirety, in order to note the causes of action brought and relief sought in those cases. *See Hargrove v. N.Y.C. Sch. Const. Auth.*, No. 11-CV-6344 (CBA) (LB), 2013 WL 2285173, at *4 (May 23, 2013) (taking judicial notice of related actions filed by parties (citing cases)). The Court views these documents solely to observe the existence of the allegations made therein, not for the truth of the matters asserted.

14

provided factual support for this theory. (*See id*. at ¶¶ 61, 63-66.) Accordingly, the Court simply cannot say that such statements were not "possibly or plausibly" material and pertinent. *Weinstock*, 42 N.Y.S.3d at 207–08.

Considering the relative importance of the allegations about John Deaton in the *Kern* and *Ratner* complaints, and in light of the Second Circuit's characterization of the litigation privilege as "the broadest possible of privileges," *Kelly*, 485 F.3d at 666, the Court finds that the alleged defamatory statements were material and pertinent to the underlying lawsuits, and are therefore absolutely privileged.

To the extent the Deatons attempt to avoid application of the privilege by arguing that statements made in the course of litigation actually constitute republications, this argument defies logic. Even if the statements made in the *Ratner* and *Kern* complaints were republications, they were made in complaints filed in court. The Deatons cannot avoid the inescapable fact that the only timely defamatory statements alleged in their complaint were made in judicial proceedings and are shielded by absolute privilege.

Finally, the Deatons assert that this case should proceed to discovery to afford them an opportunity to prove malice. (Pl. Opp'n at 5–6.) As explained *supra*, when a statement is absolutely privileged, the publisher's motive is irrelevant. *See Kelly*, 485 F.3d at 666. Even assuming that Marie Napoli maliciously accused John Deaton of infidelity and harassment, and even if she made those statements to harm the business interests of the Deaton Law Firm, she did so through civil complaints related to ongoing litigation. Because those statements were pertinent to her case, they are afforded absolute protection.

Given that none of the alleged statements are actionable, the defamation claim is dismissed. [6]

## II. Tortious Interference

Under New York law, to state a claim for tortious interference with business relations, a plaintiff must satisfy four conditions: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (citations omitted); *see also Chanicka v. JetBlue Airways Corp.*, 243 F. Supp. 3d 356, 360 (E.D.N.Y. 2017). Failure to identify a specific business relationship with a third party is a "fatal" deficiency to pleading tortious interference. *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y. 2016) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010)). Moreover, plaintiffs face a "high bar" in establishing wrongful interference. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015); *see also Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 268 (E.D.N.Y. 2016). In the specific context of tortious interference with business relations, distinct from tortious interference with contract, "[c]onduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004); *see also XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 187 (E.D.N.Y. 2016). While New York courts have found an exception to this rule where the defendant "engage[d] in

---

[6] As such, the Court need not address the Napolis' additional arguments concerning spousal privilege.

16

conduct for the sole purpose of inflicting intentional harm," that exception is "narrow." *16 Casa Duse, LLC*, 791 F.3d at 262.

Here, the amended complaint only names one identifiable business relationship with a third party.[7] The Deatons point to their prior connection to Shrader & Associates, alleging that the "relationship previously led to attorney fees being earned," and that the relationship ended after "the Partners received Defendant Marie Napoli's letters." (*Id*. at ¶ 38.) The Deatons allege two acts that might be construed as interference: the letters sent to the wives of employees at Shrader & Associates, and the LinkedIn e-mails sent to "individuals associated with Ms. Dennis's current employer in Texas." (*Id*. at ¶ 22.) However, for the reasons explained below, the claim for tortious interference is dismissed as time-barred or, alternatively, duplicative of the defamation claim.

### A. Statute of Limitations

Under New York law, claims for tortious interference with business relations are generally governed by a three-year statute of limitations. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018), *reconsideration denied*, No. 15-CV-4244 (JGK), 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018); *see also Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 183 (S.D.N.Y. 2000) (citing N.Y. C.P.L.R. § 214(4)). The statute of limitations begins to run when the alleged interference occurs and "the injury is sustained, not at the time the plaintiff discovers

---

[7] Allegations that the Napolis interfered by propagating falsities "to lawyers and others involved in the nationwide practice of asbestos litigation," (Am. Compl. at ¶ 37), or to "fellow attorneys, and clients," (*id*. at ¶ 1), do not sufficiently identify specific business relationships. Failure to name a third-party business relationship is fatal and the Deatons cannot base their claim on these vague allegations alone. Similarly, the claim that Paul Napoli "attempted to use employees at the Deaton Law Firm to secretly file asbestos cases in Rhode Island" is not a cognizable claim. (*Id*. at ¶ 36.) Here, too, the Deatons fail to allege that a business relationship with a third party was harmed.

17

the injury." *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 742 (E.D.N.Y. 2015) (citation omitted).

Given that the Deatons filed this action on March 28, 2017, any claim predicated on acts occurring earlier than March 28, 2014, are untimely under a three-year statute of limitations. The letters mailed to the wives of Shrader & Associates employees were sent in November 2013, and thus any claim based on those letters must be dismissed as untimely. To be sure, the LinkedIn e-mails were sent in May 2014, and are not time-barred. However, the cause of action for tortious interference is duplicative, which constitutes an independent ground for dismissal.

### B. Duplicative Claim

"[I]t is well settled that a claim for tortious interference is duplicative of a defamation claim . . . where the entire injury complained of by plaintiff flows from the effect on his reputation." *Travelex Currency Servs., Inc.*, 2019 WL 1259102, at *7 (quoting *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order)). Where defamatory statements harmed a plaintiff's reputation and he lost business contacts as a result, those claims are "in truth defamation claims." *Katz v. Travelers*, 241 F. Supp. 3d 397, 407 (E.D.N.Y. 2017) (finding tort claims were actually "[d]isguised" defamation claims where the "gravamen" of the injury was harm to plaintiff's reputation "or harm that flows from the alleged effect" on his reputation), *reconsideration denied*, No. 16-CV-4389 (ADS) (SIL), 2017 WL 4180012 (E.D.N.Y. Sept. 20, 2017). The Second Circuit has affirmed dismissals of tortious interference claims as duplicative where "economic damages derive[d] from defamatory statements." *Goldman v. Barrett*, 733 F. App'x 568, 571 (2d Cir. 2018) (summary order) (citation omitted). In *Goldman*, for example, "converging claims" for defamation and tortious interference were "premised on identical underlying factual content": statements made to plaintiffs' potential

business partners impugning plaintiffs' integrity. The Court found that, "[e]ven if the Defendants possessed more than one intention, Plaintiffs have not alleged an independent source of harm." *Id.*; *see also Wexler v. Allegion (UK) Ltd.*, No. 16-CV- 2252 (ER), 2018 WL 1626346, at *8 (S.D.N.Y. Mar. 30, 2018); *Pusey v. Bank of Am., N.A.*, No. 14-CV-04979 (FB) (LB), 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015).

Here, too, the alleged interference and resultant loss of business flowed from reputational damage. The Deatons allege that they lost a business relationship because the Napolis damaged their reputation by disseminating accusations of infidelity and harassment. Insofar as their claim is based on defamatory statements, their alleged injuries "flow directly from such statements" and the impact they had on their reputation. *Travelex Currency Servs., Inc.*, 2019 WL 1259102, at *7. Because the Deatons' tortious interference claim sounds in defamation, it must be dismissed as duplicative.

Moreover, given the Court's finding, the one-year statute of limitations for defamation applies. *See Guelen v. Distinctive Pers., Inc.*, No. 11-CV-01203 (JG) (SMG), 2011 WL 3420852, at *4–5 (E.D.N.Y. Aug. 4, 2011) (noting that "the essence" of a claim, rather than the name plaintiff gives it, "dictates the applicable statute of limitations"). Because all of the alleged conduct, including the LinkedIn emails, occurred before March 28, 2016, the claim is untimely.

Accordingly, the Deatons' tortious interference claim is dismissed as time-barred, and in addition, as duplicative.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion, (Doc. No. 39), and the amended complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to

enter judgment in favor of defendants, to mail a copy of the judgment and this Memorandum and Order to the *pro se* plaintiffs, to note the mailing on the docket, and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      September 27, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge